UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATASHA FRANKE,

    Plaintiff,

v.

                          Case No. 13-CV-13432-DT

                          HONORABLE DENISE PAGE HOOD

TIG INSURANCE COMPANY,

    Defendant.

_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**I.**    **BACKGROUND**

   **A.**    **Procedure**

This matter was removed from the Washtenaw County Circuit Court, State of Michigan, on August 9, 2013. Plaintiff Natasha Franke ("Plaintiff") seeks to recover No-Fault insurance benefits from Defendant TIG Insurance Company ("Defendant").

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 21)  Plaintiff filed a response to the summary judgment motion, and Defendant filed a reply to Plaintiff's response. (Doc. Nos. 29, 34)  A hearing on Defendant's summary judgment motion was held on June 11, 2014.

   **B.**    **Facts**

Plaintiff was diagnosed with spinal muscular atrophy ("SMA") at the age of

three and patients with SMA are "not able to regain those muscular atrophies once lost." (Doc. No. 29, Pg ID 561) Plaintiff alleges that on or about July 23, 1997, she was an occupant of a motor vehicle that was involved in a collision, wherein she sustained accidental bodily injuries "within the meaning of Defendant's policy and the statutory provision, M.C.L. § 500.3105." (Compl. ¶ 7) More specifically, Plaintiff states that on July 23, 1997, she was in a wheelchair transporting by bus when the bus driver suddenly braked and because the wheelchair she was in was not properly secured, she fell to the floor "sustaining bilateral distal femur fractures that were not surgically able to be repaired." (Doc. No. 29, Pg ID 561) Plaintiff claims that, (a) as a result of that accident, she "suffers from chronic pain, fixation of the knee joints, and an inability to pivot transfer" and (b) the substantial period of hospitalization necessitated by the accident "caused a greater deterioration of other muscles and throughout her body." *Id.*

The instant cause of action constitutes the fourth lawsuit Plaintiff has filed against Defendant in order to recover No-Fault benefits attributable to the 1997 motor vehicle accident. In each of the three prior lawsuits, all of which were initiated and litigated in Washtenaw County Circuit Court, the parties settled. In the most recent preceding lawsuit, filed in 2011, the circuit court judge denied a summary judgment motion filed by Defendant that was substantively similar to the present motion before

the Court. Although Defendant appealed the circuit court judge's ruling, the parties reached a settlement and Plaintiff voluntarily dismissed that lawsuit, following a case evaluation. The settlement addressed benefits to be paid up to June 21, 2012.

In the instant case, Plaintiff contends that, at the time of the accident, she was insured with the Defendant under the provisions of an automobile insurance policy which was then in effect under and in accordance with the provisions of M.C.L. §500.3101, *et. seq.* (the "No-Fault Act"). Plaintiff claims that she should be awarded Michigan No-Fault insurance benefits, including payment for medical bills and attendant care, due to the injuries sustained in the motor vehicle accident for the period beginning on June 25, 2012 to the present. (Compl. ¶¶ 7-9) Plaintiff claims that the Defendant has "unreasonably refused to pay . . . or has unreasonably delayed in making proper payments," contrary to M.C.L. § 500.3148, and seeks declaratory judgment to determine:

> (a) The applicability of the No-Fault Act to the claims of the Plaintiff;
> (b) The amount of wage loss benefits, replacement service expenses, medical expenses, no-fault interest, actual attorney fees and other benefits owed to the Plaintiff;
> (c) whether, and in what amount, any reduction, set offs or reimbursements are entitled to be claimed by the Defendant; and
> d) Such other determinations, orders and judgments as are necessary to·fully adjudicate the rights of the parties.

(Compl. ¶¶ 11, 13)

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

> **B.   Genuine Dispute of Material Fact – Has Plaintiff Incurred Expenses Attributable to the 1997 Motor Vehicle Accident?**

In its motion for summary judgment, Defendant first argues that Plaintiff is not entitled to insurance benefits under the No-Fault Act because Plaintiff did not "incur" the expense of services that No-Fault benefits are designed to compensate. *Relying on* M.C.L. § 500.3107(1); M.C.L. § 500.3110(4).

M.C.L. § 500.3107(1) provides, in relevant part:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. . . .

Similarly, M.C.L. § 500.3110(4) provides that "personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred." Defendant does not become liable for attendant care benefits under Michigan law until she can show that she has incurred such expenses, *i.e.*, that she is liable or obligated to make payments

of attendant care services. *See, e.g., Proudfoot v. State Farm Mut. Auto. Ins. Co.*, 469 Mich. 476 (2003); *Coombs v. State Farm Mut. Auto. Ins. Co.*, No. 197245, 1997 WL 33344869 (Mich.Ct.App, Aug. 1, 1997).

Defendant asserts that Plaintiff has not incurred, and will not incur, any expenses because Janet Franke, Plaintiff's mother and "provider," is compensated by the State of Michigan through Medicaid for home-based services she provides to Plaintiff. Defendant contends that Janet Franke is compensated through Michigan's "Home Help Providers Program" for services that include attendant care services. Defendant further contends that, in order to participate in the Home Help Providers Program, a provider such as Janet Franke must agree that the Medicaid payment she receives constitutes full and final payment for services rendered. It is undisputed that Janet Franke signed a Medicaid Assistance Home Health Provider Agreement that states that the Medicaid payment [would] be accepted 'as payment in full" and that they '[would] not seek or accept additional payments from the beneficiary or any other source.'" (Doc. No. 21, Exhibit 8) Moreover, M.C.L. § 400.111b(14) provides, in relevant part (emphasis added):

> Except for co-payment authorized by the department and in conformance with the applicable statute in federal law, a provider shall accept payment from the state as payment in full by the medically indigent individual for services received. A provider shall not seek payment from the medically indigent individual, the family, or representative of the individual for either of the following:

>(a) Authorized services provided and reimbursed under the program.

In addition, both the Michigan state courts and the Sixth Circuit have held that where Medicaid has paid for services rendered to a patient, neither the patient, the provider, or an insurer may recover for those same services (a practice known as "balance billing"). *See, e.g.*, *Sheeks v. Farmers Ins. Exch.*, 146 Mich.App. 361 (1985); *Dean v. ACIA*, 139 Mich.App. 266 (1984); *Coombs , supra*; *Spectrum Health Cont. Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir. 2005).

Defendant moves the Court to find that Plaintiff has not "'incurred' any expenses for attendant care because she has not become 'liable' to pay for attendant care services rendered not paid by Medicaid" and that, further, Medicaid already compensates Plaintiff's provider (Janet Franke) for any care that Plaintiff receives. (Doc. No. 21, Pg. ID 299)  In response, Plaintiff argues Defendant's motion should be denied: (a) based on res judicata or collateral estoppel, and (b) because Plaintiff has incurred attendant care expenses that do not fall within the services covered by the Home Help Providers Program or the Medicaid payments made pursuant thereto.

### 1. Res Judicata/Collateral Estoppel Not Applicable

Plaintiff contends that findings by the Washtenaw County Circuit Court in the 2011 lawsuit that involved the same facts and parties in this case bar Defendant from "rearguing the exact same motion" in this action. (Doc. No. 29, Pg ID 577)  Plaintiff's

reliance on res judicata and/or collateral estoppel is misplaced.  As Defendant asserts, the prior lawsuit sought benefits for care arising before June 21, 2012, and this case seeks benefits for care arising after June 25, 2012.  As such, "the same facts or evidence are [not] essential to the maintenance" of the instant claim as were essential to the maintenance of the claim in the prior lawsuit, which is a prerequisite to a finding of res judicata. *Jones v. State Farm Mut. Auto. Ins. Co.*, 202 Mich.App. 393, 401 (1993).  In other words, although the parties are litigating the same <u>type</u> of services in this case as in the 2011 lawsuit, the services at issue in the present case have been and will be provided after June 25, 2012, whereas the services at issue in the 2011 lawsuit were provided on or before June 21, 2012.

In addition, a Michigan Court Rule governing a party's acceptance of a case evaluation specifically provides:

> [A] judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection benefits under MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

M.C.R. 2.403(M)(1).  In other words, a settlement as a result of case evaluation does not govern claims for no-fault benefits that may arise in the future.  Accordingly, as 2011 lawsuit settled following case evaluation, the proceedings in the 2011 lawsuit do not govern the claims in this action.  For the same reason, collateral estoppel does

not operate bar relitigation of the issues from the prior case. *See, e.g., Leahy v. Orion Twp.*, 269 Mich.App. 527, 530 (2006) (collateral estoppel only "bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action" and "[a] decision is final when all appeals have been exhausted . . ."). When an appeal is not exhausted because of a dismissal on other grounds (*e.g.*, a settlement, as occurred in the prior case), collateral estoppel does not attach. *See, e.g., Van Pembrook v. Zero Mfg. Co.*, 146 Mich.App. 87, 102-03 (1985); *Markham v. Anderson*, 465 F.Supp. 541, 543 (E.D. Mich. 1979); *Eaton Cty. Bd. of Rd. Comm'rs v. Schultz*, 205 Mich.App. 371, 377 (1994).

### 2. Attendant Care Expenses are a Question of Fact for the Jury

Plaintiff next contends that Medicaid payments do not bar insurance companies from also paying benefits pursuant to the No-Fault Act. Specifically, Plaintiff argues that there are two different competing conditions requiring attendant care needs in this case, only one of which is attributable to her SMA and covered by Medicaid. Plaintiff asserts that the second condition is the result of a change of condition that is attributable to the injuries she sustained in the 1997 motor vehicle accident and should be paid by Defendant. Plaintiff maintains that there is a genuine dispute of material fact regarding: (1) attendant care services arising out of the injuries from the motor vehicle accident, and (2) the degree to which such services are compensable by

Defendant. Stated another way, Plaintiff asserts there is a question of fact whether or not there are overlapping hours between the services that are reasonably related to an indigent person needing Medicaid assistance for SMA and what Defendant is obligated to pay in accordance with the No-Fault Act. The Court agrees.

Defendant's argues that *Sheeks, Dean*, *Coombs,* and *Spectrum Health* govern this case. In *Sheeks, Dean, Coombs*, and *Spectrum Health*, the plaintiffs were seeking the difference between the amount Medicaid paid and the No-Fault "reasonable and customary payment" amount for the same service. Defendant's position is exemplified by the following position:

> At issue in this case is Plaintiff's claim that she requires 24-26 hours of daily attendant care based on the 1997 motor vehicle accident. <u>This is essentially broken down into one person [Janet Franke, presumably] providing 24 hour care and a second person providing two hours of attendant care for assistance with transfers</u>, which Plaintiff alleges requires two persons.

(Doc. No. 28, Pg Id 502) (emphasis added). In other words, Defendant's argument is largely based on the premise that Janet Franke (who, it is undisputed, does receive payments from Medicaid pursuant to the Help Provider Agreement for services rendered to Plaintiff) is providing 24 hours of care and someone else is providing two hours of care.

As Plaintiff has expressed, however, her claim:

> . . . in this litigation is for 18 hours of attendant care. These 18 hours

> comprise . . . her need of 2-person assist at times as well as increased assistance on a day-to-day basis where she has lost that independent function from the deconditioning of her SMA and fracture pain.

(Doc. No. 32, Pg ID 1215) Further, Plaintiff is seeking payment for different services than those that she was provided prior to the 1997 motor vehicle accident and that were solely attributable to SMA. Rather, Plaintiff contends that she is entitled to payment for the additional hours of attendant care she requires as a result of the 1997 motor vehicle accident. Plaintiff appropriately relies on *Johnson v. Michigan Mut. Ins. Co.*, 180 Mich.App. 314 (1989). Therein, the Michigan Supreme Court explained:

> It is irrelevant that plaintiff would have qualified as medically indigent under the Medicaid statute had he not been injured by an automobile, since the fact remains that in this case [plaintiff] *was* injured by an automobile and his no-fault insurer was not entitled to a set-off.

*Id.* at 321 (citing *Workman v. DAIIE*, 404 Mich. 477, 502 (1979)).

The Court also finds the instant case is distinguishable from *Sheeks, Dean, Coombs,* and *Spectrum Health*. First, no one person can provide (or legitimately claim that she provides) 24 hours of service per day, every day–and neither Janet Franke nor any other care provider has claimed to have done so with respect to Plaintiff. Second, 2-person assists require, by definition, two people. As such, not all of the services have been or could be provided by Janet Franke alone. For both of these reasons, balance billing is not an issue in this case–or at least it is not the only

issue.

Third, multiple medical professionals (including those who conducted IMEs of Plaintiff) have stated that Plaintiff requires 2-person transfers and 24 hours of care. Fourth, as Plaintiff has argued, there is evidence in the record that Plaintiff has billed Defendant for services required pursuant to recommendations and opinions of medical professionals. If the jury determines that such services were required and were not the same services for which Medicaid has already compensated Janet Franke (or any other provider that might be at issue), Plaintiff could recover for such services. Again, there is a question of fact regarding the degree and relationship between those services Plaintiff requires that are simply attributable to her SMA and those services that are attributable to the 1997 motor vehicle accident. If any of the services are attributable to the 1997 motor vehicle accident, the jury will be need to determine how much attendant care Plaintiff requires as a result.

Finally, Defendant's argument does not seem to take into consideration that this is a declaratory action. It is true, as Defendant argues, that Plaintiff must provide proof that she actually incurred expenses in order to recover damages for services at trial. *See, e.g. Proudfoot*, 469 Mich. at 483-85 (reversing a "judgment that ordering [an insurer] to pay the total amount of future home modification expenses . . . because the expenses in question [have] not yet been incurred."). For purposes of prevailing

on her declaratory action, however, Plaintiff need not provide proof of past incurred expenses; Plaintiff only has to prove that she needs the services she claims in order for the Defendant to be liable for–and ordered to pay benefits for–such services. *Id*. at 483 (affirming declaratory judgment where the plaintiff supplied proof that services were reasonably necessary). Defendant is not entitled to summary judgment and its motion must be denied.

### III.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant TIG Insurance Company's Motion for Summary Judgment (No. 21) is DENIED.

S/Denise Page Hood<br>
Denise Page Hood<br>
United States District Judge

Dated:  September 29, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry<br>
Case Manager